May it please the Court, my name is Joel Spector and I represent the Fitzgerald Living Trust in this matter. I'd like to reserve the last minute for rebuttal. The magistrate in this case made two fundamental errors. First, he analyzed the case backwards. He analyzed the statutory rights first and then concluded the common law rights didn't apply. Instead, as the Forest Service's own regulations require, he should have analyzed the common law rights first, and then he wouldn't have even had to get to the statutory rights. So, counsel, now, your argument regarding the regulations requiring analysis of the common law rights first, was that made in your brief? Yes. Okay. What pages of your brief flesh out that? I don't have that brief with me, but it's implicit through most of the brief, I believe. I don't know if I can identify a specific page. I can certainly look. That's a very concrete argument. I can certainly provide that for the Court. The issue boils down to the fact that the common law rights must be addressed first. And why is that? The Forest Service's own regulation states, as I think we cited in the brief in two places, that prior to issuing any ANILCA easement, the authorizing officer must ensure that the landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law. So I'm looking at your opening brief. Yes. And I'm looking at the sections, the headings of your opening brief. I don't see that as a concrete argument that the common law easement must be addressed first. I don't see that set out as a concrete argument. We identified the ANILCA regulation, that's 36 CFR 251.114, and we also identified the actual plain language of FLTMA, which states that all actions by the secretary concerned under this Act shall be subject to valid existing rights. I understand, but what I'm saying is, you know, you're making a specific argument here that the magistrate judge committed error by not assessing the common law easements first. So that's a concrete argument that has to be in your brief. The argument runs throughout the brief, and that is that these actual plain language of the Forest Service's own regulation and the plain language of FLTMA requires that you first establish the common law rights, and then once the common law rights are established, you then analyze whether the statutory rights apply. Now, here, the common law ---- I guess from the standpoint you would like us to follow the Tenth Circuit case. Correct. But the Adams's cases, which are our cases, are contrary to your position. Well ---- So how ---- I mean, how can we reach the result that you want us to reach without going en banc on Adams? Well ---- Let's see that flying right, you know, I can't get around it. Sure. I mean, we have to follow our own precedents, so we can't say it was wrongly decided in this three-judge panel. Sure. And that seems to me what you're asking us to do. The Adams 2 case is somewhat of an anomaly, because previously in the Montana Wilderness case, this Ninth Circuit held that statutory rights do not preempt the common law necessarily, but instead they provide an alternate basis. The anomaly doesn't matter. The question is what does it hold and what do we need to do with it? I'm merely asserting that in Montana Wilderness, which wasn't expressly overruled by Adams 2, they seem to have conflicting opinions. And I would ---- I would propose that Adams 2 actually misinterpreted the statute and that this Court's holding in Montana Wilderness ---- If Adams 2, whatever it says, is the law, I mean, is it dispositive of the arguments that you're raising? I don't think that ---- It's certainly not a point. But it doesn't raise ---- it doesn't analyze the statutes in the proper light specifically. It said that ---- Well, you're saying Adams is wrong, but what I'm saying, Adams is Adams, all right? If Adams is, you know, if it's wrong, then what you're saying is that, you know, it's wrongly decided and you need to go en banc. But Adams being the law, if it's controlling in your case, we either have to say Ninth Circuit precedent, you lose, or go en banc. I'm not sure that Adams is any more controlling than the Montana Wilderness case. And if it is, then maybe it would be necessary to go en banc. But the fact of the matter remains that not only did the statutes not preempt the common law, but the statutes expressly preserve the common law. The Savings Clause in the Flipmist states that all actions by the Secretary concerned under this Act shall be subject to valid existing rights. And then the Forest Service's own regulation states that prior to issuing an ANOCA easement, the authorizing officer must ensure that the landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law. So ---- As I understand it, even if they do have ---- isn't the point of Adams that whether they have an easement or don't have an easement, it's still by common law, it's still subject to the regulation permitted by the statute. So it essentially doesn't matter. It matters here because once you determine that the common law rights exist, then the regulations that the Forest Service is trying to force the Fitzgeralds to sign become unreasonable because they fundamentally change the nature of the interest. The Fitzgeralds have acquired a common law ---- The Fitzgeralds have acquired a common law under three theories, by necessity, by implication, and expressly. The necessity, for example, as I understand it, is exactly what it says. It's by necessity. Therefore, if at the time they want to exercise it, they don't need it because they can get something else, i.e., they can get an easement from the government under these So there's no way to decide the easement by necessity without looking at the statutory easements, because if there's a statutory easement, there isn't an easement by necessity. Is that correct? Well, there are two points to that, actually. First of all, the Forest Service is asserting, and the magistrate below wrongly concluded, that easements by necessity do not apply against the Federal Government. I'm not talking about that. I'm saying that my understanding of the common law of easements by necessity is that they are by necessity, and therefore ---- and they can change over time for that reason. In other words, you don't ---- they're not prescriptive. Sure. You need ---- the necessity requirement must be met both at the time of severance and today. It's a gaping hole in your brief, by the way. What's that? It's a gaping hole in your brief. You mentioned that rule, but then you completely ignore it. So go ahead. Okay. As far as necessity is concerned today, the ANILCA, as is being implemented by the Forest Service in this case, doesn't negate the necessity requirement because of the annual fee. Specifically, if all a person would have to do to negate the necessity requirement was pay an annual fee, the doctrine of easement by necessity would never have been established in the first place. So, in other words, a person would come to court, ask for an easement by necessity, and the judge would say, you don't have an easement by necessity. Just go pay for whatever right you need, in which case the doctrine would never have been developed in the first place. The doctrine was developed because you don't have to necessarily go out and pay for a fee you need it to. Well, wasn't the doctrine developed because there was no avenue to get an easement out of the way, even by payment of a fee? There was no alternative to the easement that was required. That certainly happens in some cases, I think. But in certain instances, the landowner may not be willing to grant the inholder access over his land, so he might not be willing to sell an easement. Exactly. So it's not in lieu of a fee. It's simply in lieu of a refusal of access even for a fee. Well, I think that this mere requirement of having to pay a fee, as it's being implemented, as the Forest Service is trying to implement the ANILCA easement, negates the necessity, does not negate the necessity requirement. Is the fee the core of your client's objections? It's hard to figure out what's really going on here, because apparently for $114 a year they can get what they want. It's not only the fee, although the amount is not necessarily the issue. It's the actual principle, having to pay a fee for the property. They think they own something. They think they own the easement. And nobody should be able to dictate how, when, where they use it. Is that basically it? Well, see, once it's established they have a common law easement, then the Forest Service's implementation of the regulations become unreasonable, because it fundamentally changes the nature of the interest. How? It fundamentally changes the nature of the interest. Once they have a common law easement, as this Court knows, an easement is an while the Forest Service is forcing the Fitzgerald to sign what's called a Flipma easement, because it's revocable at will by the Forest Service, it's not an easement at all. It's actually a license. That's what I'm saying. You're saying your clients say they have an easement and nobody can interfere with it in any way. You can't change it. You can't condition it. You can't do anything to it. That's not necessarily what we're asserting. We're asserting that as it's being applied in this case by the Forest Service, because it's revocable and because of the principle of having to pay a fee, for example, that that would be an unreasonable regulation. But once you have to first establish that a common law right of access exists. The easement by necessity is not in perpetuity and it is not non-terminable, as I understand it. It's terminable as long as you give somebody some alternative access. So that's not a very good example. Then we have the explicit one that you're claiming is from the impertinence language. The term impertinence is thereof. Which, and the issue there or the problem there seems to be that we don't really know what the impertinence thereof were in 1920. And there doesn't seem to be a record on that. And the third one is what? It's implied by the sale of the by the Homestead Act. Is that right? Exactly. The Homestead Act, the intent of the Homestead Act was to induce settlers to relocate from the west. The Homestead Act has been around, one of the things I stress, for close to 100 years, more than that, 150 years. Has anybody ever found this implied easement? There is some case law on the fact that an implied license exists. But the issue is that the license exists while the settler is trying to satisfy the requirements of the Homestead Act. Once the requirements are satisfied and the patent is issued, then the settler gets a tangible interest, a real interest in land. And as the restatement of property in general common law states, that a license coupled with an interest in land is, in fact, not a license at all, but is an easement, an irrevocable easement. So in this case, the intent of Congress was then to grant an irrevocable easement to access the land. But there is no case law in the last, what, 106, 150 years to state that? The district court in the Montana Wilderness case, which this Court upheld on other grounds, did conclude that an implied easement existed under similar circumstances. Okay. Thank you. We are over our time. Thank you very much. Good morning. May it please the Court. Matthew Sanders for the United States. This Court squarely held in Adams 1 and Adams 2 that common law access rights are preempted by FLTMA and ANILCA whereas here the access sought is over federal public lands. This means that the United States can require the Fitzgeralds to apply for and obtain access under FLTMA regardless of any common law easements they may have and regardless of when any such common law access rights may have existed. Well, I'm trying to say what I mean was that it's preempted in the sense that they can regulate the access. That's right. Obviously, at some point you'd have a taking if there were actually a common law access that they were simply ignoring altogether. But they can regulate it as they can regulate other uses of property. Right. Is that basically what I was told? I read it that way, yes. So this is what I find strange here. Two things. One is that what they purported to give them was or purported to do was not to regulate their use of an easement, but to give them an easement. Right? That's a little – I mean, that does seem inconsistent with what they're having in common law easement. And this is all as to whether we can really avoid the question of whether they have a common law easement. Of course. And to say we're giving you an easement seems to suggest that you don't have anything to begin with. But secondly, do any of these cases deal with the fee question? Here the fee was stated to be the market rate of an easement, not the cost to the government of regulating or of upkeep or of anything, but essentially they were selling them an easement. Well, if they had an easement, why were they selling them an easement? Well, let me try to address those two points. First, the Forest Service here did make the implicit determination that, in fact, the Fitzgeralds do not have a common law easement. And so to get to their property and to give them the access they are entitled to under ANILCA, the Forest Service had to provide a flipment easement that would do that. With regard to the – We don't need to decide that. No, I think that's right. I think that's right. So Adams 1 and Adams 2 state that regardless of whether there are any common law easements, the Forest Service has the authority to regulate those easements. That is, inholders are certainly entitled to reasonable access to their property under ANILCA. So if the Forest Service determines under 36 CFR 251.114F1, the regulation that my opposing counsel was mentioning earlier, that there is a common law easement, the Forest Service can regulate it. Or if it determines – And I understand that to mean things like you can't drive at certain times and you can't drive certain vehicles and you can't drive at certain speeds and things like that. But that's not what the objection is here. What's the $114 for? Well, FLTMA's 43 U.S.C. 1764G and the Forest Service regulations 36 CFR 251.114B require the Forest Service to exact a fee for the use of a right-of-way issued under FLTMA or ANILCA. But then if you're issuing a right-of-way, that suggests that you're not recognizing any common law right. And if they had a common law right, they might not have to pay the $114. The real question is can we, given the $114, which is assertively for essentially the sale of the right-of-way, and you've just said that, can we avoid the question of whether they didn't have to pay for it because they already had? Well, I think that's a good question, and it's a bit touchy in this case. Of course, Fitzgerald's arguments as to why the fee here is unreasonable is that they do, in fact, in their view, have a common law easement, and we respond that they don't, and therefore, they would have to – there's no argument that they wouldn't have to pay a fee under a common law easement. What you're really saying is that Adams doesn't solve the problem, then. I agree, not with respect to the fee. If you look, though, at the provisions of FLTMA, the relevant provisions of FLTMA and the regulations, as I just stated, the fee is mandatory, and the Fitzgeralds haven't brought a challenge to those particular provisions of FLTMA and the Forest Service regulations. And certainly, there's nothing inherently unreasonable in requiring a fee for the use of National Forest System lands. But there may be something unreasonable in a fee that is assertively in the amount of the cost or the effect of a common law – of a easement when they claim they already had an easement. In other words, if the fee were said to be for the government's maintenance of this road, that would be one thing, but that isn't how it's being articulated. I understand. If it were tied to the administrative cost of issuing the FLTMA easement, for example, that might be different from the easement, but it's not being articulated that way. I certainly understand that, and I cannot give you a better response. It may be that the fee provision here is unreasonable, but that doesn't make the other conditions in the FLTMA easement unreasonable, and it certainly does not in any way undermine the authority of the Forest Service to require the Fitzgeralds to apply for and obtain a FLTMA easement in the first place. Counsel, if one of the requirements is unreasonable, how do you salvage the decision? Well, the court can still look to the reasonableness of the other conditions in the FLTMA easement, and as we point out in our brief, the FLTMA easement gives the Fitzgeralds virtually unfettered access to their property. That is, it doesn't restrict the types of vehicles that the Fitzgeralds may use or when they may use them, and it doesn't restrict what the Fitzgeralds may do with their property or to whom they may sell it. But if we assume for purposes of this argument that the Fitzgeralds had a common law easement, which they don't have to pay for, and then the Forest Service makes them pay the fair market value, why wouldn't that be unreasonable? Well, again, I think that goes only to the fee provision. That doesn't go to whether the Forest Service can require a FLTMA easement in the first place. But that's the condition under which this easement has been proffered to the Fitzgeralds. And that's what they're challenging. Right. But if they refuse to pay that, then they don't get the easement. Well, but the court could still conclude, I think, that the fee provision, that the requirement that they pay a fee is unreasonable, and excise that and say that's unreasonable. But the remaining conditions in the FLTMA easement and the FLTMA easement itself are certainly reasonable regulation. But we can't do any of that, as I understand, and this is why this all seemed quite complicated to me, until we decide whether there is some property right that they have. Because if they have no preexisting property right, then it's all perfectly reasonable. Why shouldn't they have to pay for the market rate of the cost of the easement? That's right. I think that is the rub in this case. Is that if, in fact, they do have a common law easement, then there is a good argument that they don't have to pay a fee. But if they do not have a common law easement, as we assert, then the Forest Service can certainly require them to pay a fee because they don't have any property interest in which they would not otherwise have to pay a fee for. What about the easement by necessity, which is sort of a circular thing because it only exists as long as you don't have other access. So in that instance, how does the fee operate? In other words, if they do have other access because you're willing to give them an easement for $114 a year, does that mean they have other access and therefore no easement by necessity? I think the answer to that is yes. The Tenth Circuit in Jenks 2 and this Court in Adams 1, well, the Tenth Circuit in Jenks 2 held, and this Court in Adams 1 suggested, that the statutory rights of access provided in Flipman and ILCA defeat any claim of necessity. And so I think that the Forest Service could charge a reasonable fee, a minimal fee, and still have that statutory right of access. You're saying giving them roads for $114 a year is sufficient access to defeat an easement by necessity? I think that's right. I don't think there's anything inherently unreasonable about a $114-a-year fee. The only other, I'd like to just make one point of clarification. The regulation that my opposing counsel was referring to, and that is 251.114F1, doesn't in any way state that the Forest Service cannot issue a Flipman easement if, in fact, it determines that the Fitzgeralds or somebody else have a common law right of access. It simply states that the Forest Service should make that determination and then use that information to inform its decision. And as this Court held in Scrinocchi-Castaneda, which is a recent decision authored by Judge O'Scanlan, 425F3-1213, and as the Tenth Circuit held in Janx I, the Forest Service makes that determination to inform its decision, that is to figure out whether it should issue a Flipman easement or whether any existing common law rights of access should determine the scope of access that is granted under a Flipman easement or other right of way issued under the statute. It doesn't suggest that in any way, and we responded to this at page 28 of our response brief, that the Forest Service doesn't have the authority to issue or require a Flipman easement or other right of way if, in fact, the Fitzgeralds have a common law easement. And certainly, Adams 1 and Adams 2 stand for that proposition.  Thank you. Thank you, counsel. The case of Fitzgerald v. United States is submitted, and we are in recess until tomorrow morning. Thank you very much.
judges: Berzon, Rawlinson, Callahan